**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**DAVID P. MCDONALD,**

                                    **Plaintiff,**

**-against-**                                              **7:05-CV-55**

**ALBERTO L. GONZALES,  Attorney**
**General of the United States;**[1]
**FEDERAL BUREAU OF PRISONS,**

                                    **Defendants.**
────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**


### DECISION & ORDER

**I. Introduction**

        On January 19, 2005, Plaintiff David P. McDonald, and employee of the Federal

Bureau of Prisons, commenced this employment discrimination action *pro se* asserting

that his employer retaliated against him because he previously filed a successful

discrimination claim with the Equal Employment Opportunity Commission ("EEOC").  See

Compl. [dkt. # 1].  In this regard, Plaintiff asserts that because of his earlier protected

conduct he was denied promotions and transfers, and was harassed by the employer

────────────────────

[1]Plaintiff's action was brought against John Ashcroft in his official capacity as Attorney General of the
United States, and against the Federal Bureau of Prisons (the U.S. Dept. of Justice agency that employs
Plaintiff).  Because Alberto L. Gonzales succeeded John Ashcroft as the Attorney General of the United
States, and because Plaintiff brings no individual capacity claims against John Ashcroft, Alberto L. Gonzales
is substituted for John Ashcroft pursuant to Fed. R. Civ. P. 25(d)(1).

purposely issuing incorrect income tax documents.  Id.

In accordance with this Court's Decision and Order dated January 24, 2005 [dkt. # 3], Plaintiff filed an Amended Complaint on February 23, 2005 asserting, essentially, the same allegations but with more particularity.  See Am. Compl., dkt. # 4.[2]  It is arguable that Plaintiff also seeks in the Amended Complaint to have this Court review the remedial portion of the EEOC's award. Id.; see also McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)(A pro se litigant's pleadings should be read liberally and interpreted to "raise the strongest arguments they suggest.")(quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); 42 U.S.C. § 2000e-16(c)(allowing a federal employee to bring a discrimination claim in federal court to enforce a final agency action or to challenge it).

On June 29, 2006, Defendants moved for summary judgment. See dkt. 25.  In so moving, Defendants filed a Notice of Motion; a Memorandum of Law;  a Local Rule 7.1(a)(3) Statement of Material Facts Not in Dispute; and documents, deposition transcripts, and affidavits supporting the allegations contained in Defendants' 7.1(a)(3) Statement.  Id.  Plaintiff initially opposed the motion by moving for appointment of counsel to aid him in responding to the summary judgment motion. See Motion to Appt. Counsel, dkt. # 26.  To assist the Court in determining whether Plaintiff's claims were "of substance" so as to warrant the appointment of counsel, the Court appointed a private law firm for the limited purpose of reviewing Plaintiff's case and issuing a confidential report to the Court. See 8/14/06 Order, dkt. # 30; 10/6/06 Amended Order, dkt. # 38; see also 28 U.S.C. §

---

[2]The original Complaint was drafted on a form provided to pro se litigants by the Clerk's Office. In keeping with the provisions of that form, the original Complaint was verified under penalty of perjury.  The Amended Complaint, however, is not verified.

1915; Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997); Hodge v. Police Officers, 802 F.2d 58 (2d Cir. 1986).  After reviewing the confidential report, the Court denied the application for appointment of counsel but released the confidential report to Plaintiff so he could, "if he so chooses, use the report as a guide in responding to Defendant's motion, taking care to fill the gaps that the independent evaluator has pointed out as fatal problems." 10/26/06 Order, dkt. # 42.  The Court further warned Plaintiff that he

> must respond to the motion for summary judgment as *he* deems appropriate. The Court is not saying that the legal and/or factual conclusions reached by the independent evaluator are correct or not, but only that the report appears to be representative of the advice Plaintiff would get if he were appointed an attorney.  In response to the motion for summary judgment, Plaintiff must present the evidence of crucial facts concerning his claims, and must make legal arguments to withstand the pending summary judgment motion.

Id. pp. 6-7 (emphasis in original).   The Court ordered the Clerk of the Court to provide Plaintiff with a copy of this District's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion," and advised Plaintiff "to review this document, and consult the Northern District of New York's Local Rules and the Pro Se Handbook . . . before responding to the Government's motion for summary judgment." Id. p. 8.

On January 8, 2007, Plaintiff responded to Defendants' motion for summary judgment by submitting a two paragraph, unsigned Declaration;[3]  a 5 1/4 page type-written document that contains factual arguments in opposition to Defendants' motion (the

---

[3]Plaintiff asserts in this Declaration:

1)  I am employed as a cook foreman with the Federal Bureau of Prisons.

2) I declare under penalty of perjury that all the information enclosed is true and accurate to best [*sic*] of my knowledge.

Dkt. # 46.

document contains no legal citations but does reference Plaintiffs' exhibits); and Exhibits A through H which, for the most part, are inadmissible hearsay documents.[4]  See Plf. Response, dkt. # 46.

## II.  STANDARD OF REVIEW

The Court may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

In determining whether to grant summary judgment, the Court must resolve all

---

[4] For instance, Plaintiff's Exhibit A is a multi-page handwritten, unsigned document which Plaintiff contends is the calculation performed by the Assistant Personnel Director at MDC Brooklyn when she "figured out [Plaintiff's] back pay" after he was reinstated in 2000.

ambiguities and draw all reasonable inferences from the submitted materials in a light most favorable to the non-moving party.  Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004).  However, the nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita., 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); see also Govan v. Campbell, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003)(A plaintiff may not create a question of fact by simply making vague, conclusory allegations or broad denials.).  Further, a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment  . . .  absent a showing that admissible evidence will be available at trial."  Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985)(citations omitted); see also Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999), abrogated on other grounds, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000)("A court may [ ] strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and  conclusory statements.").  Finally, it is well settled that a non-movant cannot create a question of fact sufficient to defeat summary judgment by submitting an affidavit that contradicts prior sworn testimony.  Hayes v. New York City Department of Corrections, 84 F.3d 614, 619

5

(2d Cir. 1996).

The Local Rules of the Northern District provide a mechanism for the efficient resolution of summary judgment motions. See N.D.N.Y.L.R. 7.1(a)(3).  This mechanism places the onus on the parties to marshal the evidence that either supports, or defeats, the motion.   In this regard,  Local Rule 7.1(a)(3) requires a party moving for summary judgment to submit a "Statement of Material Facts" which

> shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits.

N.D.N.Y.L.R. 7.1(a)(3).  Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the Local Rules *require* that the party opposing summary judgment

> file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Id. (underscoring in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule

6

7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(<u>per curiam</u>)(accepting as true material facts contained in unopposed local rule statement of material facts); <u>Meaney v. CHS Acquisition Corp.</u>, 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth *no* citations – specific or otherwise – to the record")(emphasis in original); <u>McKnight v. Dormitory Auth. of State of N.Y.</u>, 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); <u>Osier v. Broome County</u>, 47  F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record").

While the Court must construe a *pro se* litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, <u>Govan</u>, 289 F. Supp.2d at 295;[5]  <u>Veloz v. New York</u>, 339 F. Supp.2d 505, 513 (S.D.N.Y.  2004), the application of this lenient standard does not relieve a *pro se* litigant of the requirement to follow the procedural formalities of Local Rule 7.1(a)(3).  <u>Govan</u>, 289 F. Supp.2d at 295; <u>see also</u> <u>Faretta v. California</u>, 95 S. Ct. 2525, 2541 n. 46 (1975)("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); <u>Edwards v. INS</u>, 59 F.3d 5, 8 (2nd Cir. 1995)("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves

---

[5] To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." <u>Govan</u>, 289 F. Supp.2d at 295.

regarding procedural rules and to comply with them."); <u>McNeil v. United States</u>,  113 S. Ct. 1980, 1984 (1993))("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").  Simply stated, on a motion for summary judgment it is the duty of the parties, not the Court, to sift through the record and bring to the Court's attention the pertinent information that may create or defeat a triable issue of fact.  <u>See</u> <u>Amnesty America v. Town of West Hartford</u>, 288 F.3d 467, 470 (2d Cir. 2002); <u>see also</u> <u>Monahan v. New York City Dep't of Corrections</u>, 214 F.3d 275, 291 (2d Cir. 2000)(The Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out.")(internal quotation marks and citations omitted).  Summary judgment will be granted when it is apparent on the facts presented that no rational trier of fact could find in favor of the nonmoving party because evidence supporting the essential elements of the non-movant's claim is lacking.  FED. R. CIV. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 322.

## III.  BACKGROUND[6]

### a.  Procedural History

Plaintiff was employed as a cook supervisor at the Metropolitan Detention Center in Brooklyn, NY ("MDC Brooklyn") and served as a shop steward.  In his capacity as a shop steward,  he reported several incidents of sexual harassment by the Assistant Food Service Administrator toward the Department Administrative Assistant.  Plaintiff was then retaliated against, resulting his resignation in January of 1996.  On February 27, 1996,

---

[6]Except where noted, the background facts are taken from Defendants' Local Rule 7.1(a)(3) Statement of Material Facts Not in Dispute.

Plaintiff initiated Equal Employment Opportunity ("EEO") counseling alleging discrimination on the basis of retaliation, and he subsequently filed a formal EEO complaint with the Federal Bureau of Prisons ("Bureau").  A hearing was conducted before an EEOC Administrative Judge who issued a decision on January 12, 2000 finding that the Bureau retaliated against Plaintiff resulting in his resignation.  The EEOC Administrative Judge awarded Plaintiff reinstatement with back pay and interest, less any earned income.  The award specified that upon reinstatement, Plaintiff was not to work under the same supervisors involved in the discrimination, and that all records of Plaintiff's resignation were to be purged from his personnel file.  Attorney's fees, as certified by his attorney in the sum of $28,781.25, were also awarded.

On February 28, 2000, the Complaint Adjudication Office of the Department of Justice ("CAO") issued a final decision concluding that the evidence in the record supported the Administrative Judge's finding of discrimination.  The CAO ordered relief in the form of reinstatement, back pay and benefits, and appropriate compensatory damages if Plaintiff could prove that he suffered injuries as a direct result of being forced to resign.  Plaintiff appealed the CAO's decision to the Office of Federal Operations ("OFO"), contending (1) that he was entitled to additional damages for his health insurance premiums incurred while he was out of work, and (2) that the Administrative Judge ordered him to be reinstatement at a different Bureau facility, not MDC Brooklyn.

In the Spring/Summer of 2000, a $168,000 back pay award was electronically deposited in Plaintiff's checking account.  The lump sum back pay award was processed by employees of the National Finance Center in New Orleans, Louisiana, not by the Bureau of Prisons.  Plaintiff was issued a single W-2 income statement for 2000 reflecting

9

the entire payment of $168,000.  See Plf. Opp. p. 2.  Plaintiff contends that the employer deducted federal, state and New York City income tax at a rate of 16% for each of the five years covered by the back pay award, but "by figuring the calculations this way and putting them on one W-2 it put [Plaintiff] in a 38% tax bracket."  Id.  Plaintiff asserts that he spoke to the Bureau's Regional Employee Services Administrator, Margaret Connors, and asked for a W-2 for each year covered by the back pay award, but that she refused.  Id.; see also, Plt. Dep. p. 61-62.  Plaintiff did not file an amended Form 1040 for tax year 2000 contending that his W-2 was inaccurate, and during his deposition he failed to provide counsel for the United States a copy of his Form 1040 for tax year 2000.

 In a decision dated October 26, 2000, the OFO upheld the COA's decision and ordered the Bureau to verify that the back pay award covered Plaintiff's health insurance premiums, or alternatively, award additional back pay.  In this decision, the OFO clarified that the Administrative Judge did not order the Bureau to place Plaintiff at another facility, but only to ensure that he would not be under the same supervisors at MDC Brooklyn.

On August 14, 2001, Plaintiff was paid $4,500 for reimbursement for medical expenses. Plaintiff contends that the Bureau improperly issued a Form 1099-MISC document for the $4,500 medical reimbursement payment indicating that the payment was for non-employee compensation thereby causing Plaintiff to incur income tax on the payment.  Plaintiff argues that this classification was done as a form of retaliation. Defendants point out that the classification of the $4,500 as non-employee income was in accordance with the OFO's decision of October 26, 2000 which required that the medical expense reimbursement be included as part of the back pay award.

On October 4, 2001, Plaintiff's attorney submitted a letter requesting $260,064 in

10

compensatory damages; $55,064 for excess tax liability; $5,000 for losses related to the

eviction from his apartment; $10,000 for loss of his automobile; $35,000 for reinstatement

at a GS-12 position; $25,000 for credit counseling; and $120,000 for indignity, pain and

suffering.  Plaintiff and the Bureau were unable to reach agreements on compensatory

damages and this matter was referred to the CAO.

On October 4, 2002, the CAO issued a decision awarding Plaintiff $25,000 in

non-pecuniary compensatory damages, and held that Plaintiff might be entitled to (1)

pecuniary damages for the added tax liability as a result of the lump sum back pay award,

and (2) damages arising from an alleged default on his car loan.   Both outstanding

damages issues were remanded to the parties for resolution.  Again, Plaintiff and the

Bureau were unable to reach an agreement so the case was referred back to the CAO for

adjudication.

In October of 2002, Plaintiff was paid the $25,000 awarded by the COA for non-

pecuniary compensatory damages. In January 2003, the Bureau sent a Form 1099-MISC

for tax year 2002 in the amount of $25,000 to Plaintiff and the IRS.  Plaintiff contends that

the Form 1099-MISC was knowingly sent by the Bureau to Plaintiff's outdated Watervliet,

New York address "to prevent [Plaintiff] from finding out about the 1099." Plf. Opp. pp. 3-5.

 Defendants assert that Plaintiff's Watervliet, New York address was used for this form

because "[t]he Complaint Adjudication Office used this address on October 4, 2002[] to

send their responses to Plaintiff." See Neidig Decl. ¶ 18(c).[7]   Defendants further point out

---

[7]Donald Neidig is the Assistant Comptroller at the Northeast Regional Office for the Federal Bureau
of Prisons. Both Plaintiff and the Defendants offered his June 19, 2006 Declaration on the instant summary
judgment motion.

11

that the document was "never returned by the Post Office." Id. at ¶ 18(c).  The $25,000 was reported to the IRS as non-employee compensation Id. at ¶ 18(d).  Neither Plaintiff nor his accountant sought to file amended tax returns for tax years 2000, 2001 or 2002.

On March 13, 2003, the CAO issued a decision rejecting Plaintiff's claim for damages for increased tax liability and for damages from the purported default on his car loan.  On August 2, 2004, the OFO modified the CAO's decision and ordered the Bureau to pay Plaintiff $40,000 in non-pecuniary damages less any amounts already paid. Since Plaintiff had previously been paid $25,000 for non-pecuniary damages, he was paid an additional $15,000.  On October 20, 2004, the OFO denied Plaintiff's request for reconsideration of this decision.

In January 2004, the Bureau sent a Form 1099-MISC for tax year 2003 in the amount of $25,000 to Plaintiff and the IRS.  Again, the form was sent to Plaintiff's Watervliet, New York address. Plaintiff asserts that this Form 1099-MISC was mailed "after [Plaintiff] had told them before that this was an incorrect address." Plf. Opp. p. 6. Defendants contend that this Form 1099-MISC was sent by a mistake caused by a computer error (an erroneous computer tape input), and that Plaintiff was one of 85 employees of the Bureau who were affected by this computer error and received erroneous 1099-MISC forms.  On April 26, 2004, Plaintiff and the 84 other affected Bureau employees were issued corrected 1099-MISC forms.  For Plaintiff, this corrected form showed that he had $0 non-employee compensation from the Bureau for tax year 2003.  He was also issued a letter explaining the error. On January 7, 2005, a copy of this corrected Form 1099-MISC was mailed to Plaintiff at his current address because, Defendants contend, he had, by then, notified the Agency of his change of address.  The

Bureau also issued corrected 1099-MISC forms to the IRS and, after contacting the IRS about the problem, sent a letter to Plaintiff advising him of who to contact at the IRS so that he could resolve any problem himself.

### b.  Promotion/Transfer Request History

Plaintiff alleges in the Amended Complaint that in January of 2001 he applied for a position as a GS-11 assistant administrator with the Bureau of Prisons but was informed by Margaret Connors that his application was thrown in the trash for lack of time with the Bureau; that "no one sues the Bureau and gets away with it;" and that he should never try to transfer again because it will "be met with the same results." Am. Compl. ¶ 1.  During discovery, Plaintiff could not produce a copy of the opening which he purportedly saw on "usajobs" for this position.  Plaintiff stated at his deposition that he never received an acknowledgment ("green form") as to who was selected.

Plaintiff also claims that in January 2003, he submitted paperwork for a promotion and/or transfer to a prison in South Carolina and was later informed that his paperwork was lost in the mail even though he purportedly had confirmation of receipt.  During his deposition, however, Plaintiff was unable to provide this confirmation of receipt, and the documents he provided to counsel for the United States refer to a position vacancy in January of 2005, not 2003.

Despite his familiarity with the EEO process, Plaintiff did not file an EEO complaint regarding his non-promotion to the GS-11 assistant administrator position.  Similarly, he did not file an EEO complaint arising from his non-selection and/or non-transfer to a position in South Carolina in 2003.  Plaintiff makes no allegations or arguments in his opposition papers regarding the purported denials of transfers or promotions.

13

## IV.  DISCUSSION

### a.  Review of EEOC Award

To the extent that Plaintiff now seeks review of *only* the remedial portions of the EEOC's final determination, the claim is barred.  While Plaintiff could have sought *de novo* review of the entirety of the EEOC's determination (i.e. liability and damages), see 42 U.S.C. § 2000e-5; 42 U.S.C. § 2000e-16(c), he cannot re-litigate only those portions of the underlying administrative determination that he does not agree with.  See Scott v. Johanns, 409 F.3d 466, 471-72 (D.C. Cir. 2005)("Under Title VII, federal employees who secure a final administrative disposition finding discrimination and ordering relief have a choice: they may either accept the disposition and its award, or file a civil action, trying *de novo* both liability and remedy. They may not, however, seek *de novo* review of just the remedial award. . . . ."), cert. denied 126 S. Ct. 1121 (2006); Morris v. Rumsfeld, 420 F.3d 287, 295 (3rd Cir. 2005)(federal employee could not elect to enforce only liability determination of EEOC ruling while seeking *de novo* jury trial on compensatory damages), cert. denied 126 S. Ct. 1769 (2006);  Timmons v. White, 314 F.3d 1229, 1233 (10th Cir. 2003)(upholding dismissal and finding that Title VII does not permit courts to review remedial awards without first determining whether discrimination occurred);  Pamplin v. Potter, 2006 WL 1284915, at * 3 (E.D. Mich. May 10, 2006)("Plaintiff is not entitled to partial *de novo* review and any attempt to hide the nature of her lawsuit by deleting those paragraphs revealing the nature of the claim, is an exercise in futility.  Plaintiff may not selectively pursue a remedy on the claims she challenges, while foreclosing review on the claim for which she was awarded a remedy.");  St. John v. Potter, 299 F. Supp.2d 125, 129

14

(E.D.N.Y. 2004)(Postal employee who prevailed on her administrative employment discrimination charge could not seek "fragmented review" of amount of damages awarded without also submitting issue of liability for review.).  Even reading Plaintiff's Amended Complaint liberally and in a manner to raise the strongest argument that it suggests, Plaintiff does not assert a claim seeking *de novo* review of the entirety of the EEOC's final determination.  Rather, he asserts claims for retaliation that purportedly occurred as a result of the prior administrative action.

Further, Plaintiff has offered no opposition to the Government's argument that fragmented review of a final agency determination is barred. The failure to oppose a motion for summary judgment on a certain claim is deemed abandonment of the claim, see Rizzo-Puccio v. College Auxiliary Services, Inc., 216 F.3d 1073 (2d Cir. 2000)(claims not addressed in opposition to defendants' motion for summary judgment were deemed abandoned), and, in the Northern District of New York, is deemed consent to granting that portion of the motion. See N.D.N.Y.L.R. 7.1(b)(3); Bundy Am. Corp. v. K-Z Rental Leasing, Inc., 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)(Hurd, J.); Beers v. General Motors Corp., 1999 WL 325378, at *8 (N.D.N.Y. May 17, 1999) (McCurn, S.J.).

Therefore, because Plaintiff failed to object to this portion of Defendants' motion, and because Defendants have demonstrated that they are entitled to summary judgment on this issue, any claim that Plaintiff might have intended to assert seeking fragmented review of the EEOC's final determination is dismissed.

### b.  Failure to Promote/Refusal to Transfer

Plaintiff has also failed to offer opposition to that portion of Defendants' motion

seeking to dismiss those portions of Plaintiff's retaliation claim premised upon the Bureau's purported failure or refusal to promote or transfer him.  For the reasons discussed above, the claim in this regard is subject to summary dismissal based upon Plaintiff's implied abandonment and consent to dismissal.

Further, the Court finds that summary judgment is warranted based on the merits of this portion of Defendants' motion.  In order to present a *prima facie* case of retaliation under Title VII, a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find (1) that he engaged in protected participation or opposition under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.  Kessler v. Westchester County Dept. of Social Services, 461 F.3d 199,  205-06 (2d Cir. 2006)(citations and quotation marks omitted).  There is no dispute that Plaintiff can satisfy the first and second elements of the *prima facie* case.

On the third and fourth elements, Plaintiff asserts that he was subjected to a discriminatory failure to promote or refusal to transfer because he engaged in the prior protected activity.   However, whether Plaintiff makes this claim as part of his retaliation claim, or as independent claim of discrimination, see Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004),[8]  Defendants are entitled to summary judgment because Plaintiff has failed to proffer evidence sufficient to establish that he did in fact apply for a specific

_____

[8]"To establish a *prima facie* case of a discriminatory failure to promote, a Title VII plaintiff must ordinarily demonstrate that:  (1) []he is a member of a protected class;  (2) []he applied and was qualified for a job for which the employer was seeking applicants;  (3) []he was rejected for the position;  and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." Petrosino, 385 F.3d at 226 (quotation marks and citations omitted).

16

position held open by the employer.  His broad conclusory allegations that he applied for
promotion and transfer without evidence that identifies the positions for which he
purportedly applied is insufficient to carry Plaintiff's *de minimis* burden of establishing a
*prima facie* case of a discrimination arising from the purported failure to promote or refusal
to transfer.  See id. at 227.[9]   Therefore, Plaintiff's claim in this regard is dismissed.

### c.  Retaliation Regarding Income Tax Documents

Next is the question of whether Plaintiff has asserted a legally cognizable claim of
retaliation based upon the Bureau's handling of tax related documents. In this context,
Plaintiff asserts that the employer retaliated against him by (1) filing a single W-2 form for
the $168,000 payment in 2000 thereby increasing his tax liability; (2) filing a Form 1099-
MISC representing that the $4,500 medical expenses reimbursement was part of the back
pay award and therefore taxable; (3) sending a Form 1099-MISC document to Plaintiff's
outdated address so that he would be unaware of the documents and incur additional tax
liability; and (4) improperly issuing a second Form 1099-MISC for a single $25,000
payment.

---

[9]In Petrosino, the Second Circuit held:

> [T]he second element of a *prima facie* case cannot be established merely with evidence that
> a plaintiff generally requested promotion consideration.  A specific application is required to
> "ensure[ ] that, at the very least, the plaintiff employee alleges a particular adverse
> employment action, an instance of alleged discrimination, by the employer." [Brown v. Coach
> Stores, Inc., 163 F.3d 706, 710 (2d Cir.1998)].   Further, the requirement ensures that the
> fact finder is not left to speculate as to the qualifications of the competing candidates, the
> damages to be derived from the salary of unknown jobs, the availability of alternative
> positions, the plaintiff's willingness to serve in them (e.g., in other locales or on other shifts),
> etc.  The requirement also protects employers from the unfair burden of having "to keep
> track of all employees who have generally expressed an interest in promotion and [to]
> consider each of them for any opening for which they are qualified but did not specifically
> apply." Id.

385 F.3d at 226.

17

Again, the issue is whether Plaintiff has proffered sufficient evidence to satisfy the third and fourth elements of a *prima facie* case of retaliation. Kessler, 461 F.3d at 205-06. On the third element, the Supreme Court ruled in Burlington Northern & Santa Fe Railway Co. v. White, --- U.S. ----, 126 S. Ct. 2405, 165 L. Ed.2d 345 (2006) that "the anti-retaliation provision [of Title VII], unlike [Title VII's] substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." 126 S. Ct. at 2412-13. Rather, a plaintiff must merely show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415 (internal quotation marks omitted). Purposeful action by an employer that would cause an employee to incur otherwise unjustified income tax obligations, penalties and interest would satisfy this standard. The question that remains, however, is whether the employer took purposeful action that caused Plaintiff to incur otherwise unjustified income tax obligations, penalties and interest.

### (1) Single W-2

Turning first to the filing of a single W-2 form for the $168,000 payment in 2000, there is no dispute that the payment of the $168,000 back pay award was processed by employees of the National Finance Center in New Orleans, Louisiana, not by the Bureau of Prisons. Plaintiff has offered no evidence to establish a connection between the National Finance Center's issuance of a single W-2 for the back pay award and any action by the Bureau. Thus, Plaintiff has failed to establish a causal connection between the

18

prior protected activity and any action by the employer.

Further, even assuming that Plaintiff contacted the Bureau's Regional Employee Services Administrator, Margaret Connors, and asked for a W-2 for each year covered by the back pay award, and assuming further that Connors could have asked employees of the National Finance Center to issue separate W-2s but refused to do so, the claim nevertheless fails.  The uncontested facts reveal that Plaintiff did not take corrective action with the IRS in order to avoid or minimize the tax consequences of the single W-2 form, but instead unsuccessfully attempted to hold the employer responsible for the increase tax obligation in the underlying administrative action.  Having elected his remedies and failed, Plaintiff cannot now argue that the single W-2 statement constitutes a discrete act of discrimination entitling him the same damages he was previously denied. See Mitchell v. Choa, 358 F. Supp. 2d 106, 115 (N.D.N.Y. 2005)("[S]ince plaintiff received full relief on his claim of gender and age discrimination, those claims will not be further considered by the court."); Gaffney  v. Potter, 2002 WL 1008460, at *5 (N.D. Ill. May 13, 2002)( A "plaintiff should not be able to simply pick and choose those aspects of the agency's decision he or she disagrees with and seek a second chance on only those issues.").  To allow the retaliation claim to proceed on this basis would be tantamount to allowing Plaintiff to engage in the type of fragmented review of the administrative agency's determination that the Court has already found to be barred.  Because Plaintiff has not sought *de novo* review of the underlying merits of his discrimination claim arising from his forced resignation in 1996, his claim for increased tax liability from a single W-2 for his back pay award is barred and must be dismissed.

**(2)  Form 1099-MISC for medical expenses reimbursement**

With regard to Plaintiff's claim that the employer retaliated against him by filing a

Form 1099-MISC representing that the $4,500 medical expenses reimbursement was part

of the back pay award, the uncontradicted facts indicate that the OFO ordered the

payment to be made as part of the back pay award.  Thus, the 1099-MISC form classifying

the $4,500 payment as income from the back pay award was in compliance with the

underlying EEOC final determination.  No reasonable fact finder could conclude that the

employer acted in a retaliatory manner by complying with the final decision of the EEOC.

To the extent that Plaintiff challenges the OFO's determination to classify the $4,500

medical expenses reimbursement as back pay, the claim is barred for the reasons

discussed above.

**(3)  Mailing a 1099-MISC form to an outdated address**

Plaintiff has failed to raise a triable issue of fact as to whether the employer

purposely mailed a 1099-MISC form to an outdated address in January of 2003 for the

purpose of causing Plaintiff to incur unnecessary tax penalties and interest.  The

uncontested facts indicate that the employer sent the1099-MISC form to the same

address that the COA had used just three months earlier to correspond with Plaintiff, and

that the form was not returned by the Postal Service.  Plaintiff's unsworn allegation that he

had advised the employer that he moved out of the address before the 1099-MISC form

was mailed is insufficient to create a triable issue of fact as to whether the employer acted

with a retaliatory motive in using this address.  Plaintiff does not identify who he advised of

the change of address, when he advised of the change, or whether his mail was being

20

forwarded at the time in question.   Further, while Plaintiff might have incurred penalties and interest on the $25,000 payment because he did not pay his taxes on this money in a timely fashion, there is no evidence demonstrating that the employer's use of the purportedly outdated address was calculated to dupe Plaintiff into believing that he had no tax obligation on the money he had received a few months earlier.  Defendants' motion in this regard is granted.

### (4) Second $25,000 1099-MISC Form

Finally, there is no evidence from which a reasonable fact finder could conclude that the employer acted with retaliatory motive when a computer error caused it to mistakenly issue Plaintiff and 84 other Bureau employees erroneous1099-MISC forms for tax year 2003.  Further, the uncontradicted evidence indicates that Bureau took corrective action once it learned of the error, including correcting the 1099-MISC form with the IRS, sending Plaintiff a corrected 1099-MISC form and a letter explaining the error, contacting the IRS in an attempt to resolve the issue for Plaintiff, and advising Plaintiff of who to contact at the IRS so that he could resolve the problem himself.  There is insufficient evidence from which a reasonable fact finder could conclude that a reasonable employee would have found the challenged action materially adverse and of such magnitude as to dissuaded a reasonable worker from making or supporting a charge of discrimination.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED** and the action is **DISMISSED**.  The Clerk of the Court is instructed to close the file in this matter.

21

**IT IS SO ORDERED.**

**Dated:**  March 27, 2007

Thomas J. McAvoy
Senior, U.S. District Judge